## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| VANGUARD NATURAL RESOURCES, | § | Case No. 17-30560 |
| LLC, *et al.*, | § | |
| | § | (Jointly Administered) |
| Reorganized Debtors. | § | |
| | § | |
| | § | |
| VANGUARD OPERATING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| SUBLETTE COUNTY TREASURER, Wyoming | § | Adversary Pro. No. 18-03244 |
| NATRONA COUNTY TREASURER, Wyoming | § | Adversary Pro. No. 18-03245 |
| BOARD OF CAMPBELL COUNTY | § | Adversary Pro. No. 18-03246 |
| COMMISSIONERS, solely in its official capacity | § | |
| JOHNSON COUNTY TREASURER, Wyoming | § | Adversary Pro. No. 18-03247 |
| CARBON COUNTY TREASURER, Wyoming | § | Adversary Pro. No. 18-03248 |
| PARK COUNTY TREASURER, Wyoming | § | Adversary Pro. No. 18-03249 |
| SWEETWATER COUNTY TREASURER, | § | Adversary Pro. No. 18-03250 |
| Wyoming | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S OMNIBUS RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

# <u>TABLE OF CONTENTS</u>

Preliminary Statement ............................................................................................................. 1

Supplemental Statement of Undisputed Facts and Procedural History ................................ 2

Argument ................................................................................................................................ 5

    I.   The Preferential Transfers. ........................................................................................ 5

        A.  The Preference Defendants' Arguments Are Subject to Disputed Issues of Material Fact That Preclude Summary Judgment on Plaintiff's Preference Claims. ................ 5

        B.  The 2016 Ad Valorem Taxes Were Antecedent Debts. ................................................ 6

            1.  There Are Specific Penalties for Late Payment of Ad Valorem Taxes Under Applicable Wyoming Law. ...................................................................................... 6

            2.  Taxes Are Antecedent Debts Once They Are Due and Payable; Section 547(a)(4) Was Intended to Protect Against the Recovery of Estimated Taxes. .................... 9

            3.  Controlling Fifth Circuit Precedent Demonstrates that Interest on Unpaid Taxes Constitutes a Penalty. ....................................................................................... 11

            4.  Wyoming's 18% Interest Rate on Unpaid Ad Valorem Taxes is a Penalty Under Hardee's Four-Factor Test. ................................................................................ 13

        C.  Avoidance and Recovery of the Preferential Transfers Will Benefit Creditors of Plaintiff's Estate Directly and Indirectly. ................................................................ 18

        D.  The Closing of Plaintiff's Bankruptcy Case Did Not Extinguish These Causes of Action. .................................................................................................................... 22

    II.  The Satisfied Claim. ............................................................................................... 24

    III. The Improper Distribution. ..................................................................................... 25

        A.  Counts I and III of Plaintiff's Complaint Properly Invoke the Court's Equitable Powers to Claw Back the Improper Distributions. .................................................. 25

        B.  Defendants Were Unjustly Enriched by the Improper Distributions Because They Violated the Plan and Discharge Injunctions to Obtain Payment of Discharged Claims. .................................................................................................................... 27

        C.  The Improper Distributions Were Not Voluntary and the Voluntary Payment Rule Should Not Be Applied. .......................................................................................... 30

        D.  Defendants' Alleged Reliance on the Taxes Order is Implausible on its Face. ......... 32

Conclusion ........................................................................................................................... 33

Vanguard Operating, LLC, files this omnibus response (the "Response") in opposition to each Motion for Summary Judgment filed against Plaintiff by the above-captioned Defendants in their respective adversary proceedings (collectively, "Defendants' Motions for Summary Judgment"),[1] and respectfully states as follows:

## PRELIMINARY STATEMENT

Defendants hold payments that the Bankruptcy Code and equity demand they disgorge. Lacking a meritorious defense to any of Plaintiff's claims, Defendants have instead opted to throw the proverbial kitchen sink at Plaintiff through their summary judgment motions. None of their myriad defenses succeed. At bottom, the 18% interest rate and other penalties Wyoming imposes on unpaid ad valorem taxes render them antecedent debts that may be avoided as preferences, the recovery of which will directly and indirectly benefit creditors of Plaintiff's estate.

The Final Decree plainly preserved Plaintiff's claims irrespective of any statutes of limitations that would otherwise apply and binds Defendants under *Republic Supply Co. v. Shoaf*.[2] Their argument that the Final Decree did not address chapter 5 avoidance actions that might be filed by Plaintiff in the future does not succeed, no matter whether Defendants disguise it as an attack on (1) the order itself, (2) the satisfaction of the Fifth Circuit's "transactional test" as an element of the doctrine of res judicata, or (3) the application of res judicata through the "due process" exception thereto. Even if the Final Decree were unenforceable, Plaintiff would be entitled to relief from it as a void judgment under Federal Rule of Civil Procedure 60(b)(4).

Finally, because Defendants violated the Plan and the Bankruptcy Code discharge injunctions by invoicing Plaintiff for their discharged tax claims, it would be inequitable and

---

[1] References to "Docket No." refer to the docket in Chapter 11 Case No. 17-30560. References to any adversary proceeding docket will be preceded by the name of the county that is the Defendant therein.

[2] 815 F.2d 1046 (5th Cir. 1987).

contrary to foundational principles of bankruptcy law to permit them to retain the payments that they procured thereby. The payments were not authorized under the Plan. Considering Plaintiff's discharge and Defendants' wrongful conduct, the Court may exercise its equitable powers to declare that the payments were improper distributions under the Plan and order that they be disgorged by Defendants. Alternatively, the payments must be disgorged to prevent Defendants from being unjustly enriched by their inequitable conduct. Defendants' alleged reliance on the "voluntary" payments and the authorizations contained in the Taxes Order (defined below) is disingenuous, ignores Defendants' role in illegally eliciting the payments, and distorts the unambiguous language of the order, which was superseded by the Plan in any event.

Accordingly, the Court should deny Defendants' Motions for Summary Judgment.[3]

### SUPPLEMENTAL STATEMENT OF
### UNDISPUTED FACTS AND PROCEDURAL HISTORY

Vanguard incorporates the Statement of Undisputed Facts and Procedural History set forth in each Motion for Summary Judgment filed by Plaintiff against Defendants (collectively, "Plaintiff's Motions for Summary Judgment"),[4] and supplements them as provided herein.

On January 1, 2016, Plaintiff was assessed ad valorem taxes on its 2015 oil and gas production (the "2016 Ad Valorem Taxes").[5] The first-half installments of the 2016 Ad Valorem Taxes were due to Defendants on September 1, 2016, and payable on November 10, 2016.[6] If the

---

[3] Defendant Campbell County Commissioners also inexplicably demands that the proof of claim it timely filed for certain other prepetition ad valorem taxes be allowed, despite its own admission that the claim has been satisfied. While not among the central issues in this case, Defendant should be denied summary judgment on this claim, as well.

[4] Initially capitalized terms used, but not defined herein shall have the meanings ascribed to them in Plaintiff's Motions for Summary Judgment.

[5] See Wyo. Stat. § 39-13-103(b)(i)(A) ("All taxable property shall be annually listed, valued and assessed for taxation in the county in which located and in the name of the owner of the property on January 1."); 011-0005-6 Wyo. Code R. § 5(a)(i) (providing that the amount of tax to be paid in a tax year is "determined from the gross production of minerals for the previous calendar year").

[6] Wyo. Stat. § 39-13-108(b)(i).

entire tax was paid on or before December 31, 2016, "no interest or penalty [was] chargeable."[7] Defendants Campbell County Commissioners, Johnson County, and Sublette County (collectively, the "Preference Defendants") invoiced Plaintiff for the first-half installments of the 2016 Ad Valorem Taxes in September 2016.[8]

Notwithstanding the foregoing deadlines, Plaintiff did not pay the first-half installments of the 2016 Ad Valorem Taxes by November 10, 2016,[9] and the taxes became delinquent.[10] Plaintiff did not pay the first-half installments of the 2016 Ad Valorem Taxes to the Preference Defendants until January 31, 2017 (the "Preferential Transfers"),[11] the eve of the filing of the Reorganized Debtors' bankruptcy cases. Thus, it paid the taxes after the last date on which (if paid in full) they were payable without interest or penalty.[12]

During the delinquent period, the taxes incurred interest at a rate of 18% per annum under applicable Wyoming law.[13] As set forth in the Declaration of Plaintiff's expert John D. Baumgartner (the "Baumgartner Declaration") (attached hereto as "Exhibit C") and explained in section I.B.4 below, the 18% interest rate was used by Defendants as a financial sanction to force compliance with the deadlines for paying ad valorem taxes.[14] It was generally less than a quarter

---

[7] *Id.*

[8] The invoices are attached hereto as "Exhibit A."

[9] *Declaration of John D. Monroe in Support of Plaintiff's Omnibus Response in Opposition to Defendants' Motions for Summary Judgment* ¶ 4 (the "Monroe Declaration") (attached hereto as "Exhibit B").

[10] *See* Wyo. Stat. § 39-13-108(b)(iii) ("Taxes are delinquent pursuant to paragraph (ii) of this subsection when a taxpayer or his agent knew or reasonably should have known that the total tax liability was not paid when due.").

[11] Monroe Declaration ¶ 6.

[12] *See* Wyo. Stat. § 39-13-108(b)(i) ("If the entire tax is paid on or before December 31, no interest or penalty is chargeable.").

[13] *See* Wyo. Stat. § 39-13-108(b)(ii) ("The balance of any tax not paid as provided by paragraph (i) of this subsection is delinquent after the day on which it is payable and shall bear interest at eighteen percent (18%) per annum until paid or collected.").

[14] Baumgartner Declaration ¶ 6.

of Wyoming's and Defendants' cost to borrow funds through issuing debt and was well above any rate that would be necessary to compensate the government for the delayed collection of taxes.[15]

The second-half installments of the 2016 Ad Valorem Taxes were due on March 1, 2017, and payable on May 10, 2017.[16] Defendant Campbell County Commissioners filed Claim 311 for the second-half installment of the 2016 Ad Valorem Taxes against Plaintiff.[17] Plaintiff paid the second-half installments of the 2016 Ad Valorem Taxes to Defendant in full during the pendency of the Reorganized Debtors' bankruptcy cases.[18]

Accordingly, in addition to its causes of action relating to the Improper Distributions (which are the subject of Plaintiff's Motions for Summary Judgment), Plaintiff's Complaints against Defendants Campbell County Commissioners, Johnson County, and Sublette County included causes of action for:

1.  The avoidance and recovery of the first-half installments of the 2016 Ad Valorem Taxes as preferential transfers; and

2.  The disallowance of Campbell County's proof of claim for the second-half installment of the 2016 Ad Valorem Taxes as a satisfied claim.

On February 21, 2019, Defendants moved for summary judgment on all counts. Plaintiff files this omnibus Response in opposition to each of Defendants' Motions for Summary Judgment.

---

[15] *Id.* ¶ 22.

[16] Wyo. Stat. § 39-13-108(b)(i).

[17] The filing of Defendant's proof of claim is evidenced in the official claims register for the Reorganized Debtors' bankruptcy cases, which is maintained by their official claims and noticing agent, Prime Clerk LLC.

[18] *Defendant's Answer and Counterclaims* ¶¶ 16, 65 [Campbell Docket No. 11].

## ARGUMENT

I.   **THE PREFERENTIAL TRANSFERS.**

   A.   **The Preference Defendants' Arguments Are Subject to Disputed Issues of Material Fact That Preclude Summary Judgment on Plaintiff's Preference Claims.**

   The Preference Defendants' arguments that they are entitled to summary judgment on Plaintiff's preference claims completely gloss over the existence of pervasive issues of disputed material facts regarding whether:

   1.   Wyoming's 18% interest rate on unpaid ad valorem taxes constitutes a penalty and the 2016 Ad Valorem Taxes were antecedent debts for the purposes of section 547(a)(4) of the Bankruptcy Code. Indeed, the *Hardee* test, cited by the Preference Defendants for the proposition that Wyoming's 18% interest rate is not a penalty, requires examination of intensely factual issues. Accordingly, Plaintiff attaches and relies upon the Baumgartner Declaration.

   2.   Avoidance and recovery of the 2016 Ad Valorem Taxes would benefit the estate. As explained in section I.C below, there are both direct and indirect benefits that may accrue to the estate as a result of Plaintiff's recovery of the 2016 Ad Valorem Taxes.

On these issues, the Court "must view the facts in the light most favorable to the non-moving party," *i.e.*, Plaintiff, "and draw all reasonable inferences in its favor."[19] Drawing all reasonable inferences in Plaintiff's favor, there plainly is a dispute of material fact that "preclude[s] the entry of summary judgment" on Plaintiff's preference claims because these facts "affect the outcome of the suit under the governing law."[20] Thus, Plaintiff is entitled to a trial on the merits on its preference claims.

---

[19] *Salazar-Limon v. City of Houston*, 826 F.3d 272, 276 (5th Cir. 2016).

[20] *Id.*

**B.      The 2016 Ad Valorem Taxes Were Antecedent Debts.**

1.      <u>There Are Specific Penalties for Late Payment of Ad Valorem Taxes Under Applicable Wyoming Law.</u>

The argument that the Preferential Transfers do not qualify as antecedent debts under section 547(a)(4) of the Bankruptcy Code erroneously assumes that a penalty must actually be assessed for a tax to qualify as an antecedent debt. The plain language of the statute disproves this premise: "a debt for a tax is incurred on the day when such tax is last *payable* without penalty."[21] The Preference Defendants distort this language to require a penalty to actually have been assessed. Had Congress intended section 547(a)(4) to operate in this manner, Congress would have drafted it to require imposition of a penalty. It did not do so.  Rather, taxes are antecedent debts under section 547(a)(4) on "the date on which the debtor is *exposed* to penalties, rather than the date [a] penalty is *actually assessed*."[22]

December 31, 2016, was the last date by which Wyoming statutes permitted Vanguard to pay the full amount of the 2016 Ad Valorem Taxes and be exculpated for interest and other penalties otherwise imposed upon delinquent taxes.[23] The Preference Defendants listed this deadline on the face of their invoices to Vanguard.[24] When Vanguard paid the 2016 Ad Valorem Taxes on January 31, 2017, the interest that had accrued throughout the period of Vanguard's delinquency was fully vested under applicable Wyoming statutes.

---

[21] 11 U.S.C. § 547(a)(4) (emphasis added).

[22] *United States v. Pullman Constr. Indus., Inc.*, 210 B.R. 302, 307 (N.D. Ill. 1997) (emphasis added) (citing *Sicherman v. Jelm (In re Harvard Mfg. Corp.)*, 97 B.R. 879 (Bankr. N.D. Ohio 1989); *Baehr v. IRS Ctr. (In re E & S Comfort, Inc.)*, 92 B.R. 616 (Bankr. E.D. Pa. 1988); *Begier v. IRS (In re Am. Int'l Airways, Inc.)*, 83 B.R. 324 (Bankr. E.D. Pa. 1988), *rev'd on other grounds sub nom.*, *Begier v. IRS*, 878 F.2d 762 (3d Cir. 1989), *aff'd*, 496 U.S. 53 (1990); *In re Greasy Creek Coal Co.*, Ch. 7 Case No. 81-10032, 1984 WL 15648 (Bankr. S.D.W. Va. Apr. 25, 1984)).

[23] *See* Wyo. Stat. § 39-13-107(b)(i)(D) ("If the entire tax is paid on or before December 31, no interest or penalty is chargeable."); *accord id.* §§ 39-13-108(b)(i), -14-207(b)(ii). Vanguard has made this argument in its prior briefings. Defendants claim that Vanguard argued that these provisions affirmatively imposed a penalty. This is a blatant misrepresentation of Vanguard's position.

[24] *See, e.g.*, Exhibit A; *see also* Monroe Declaration ¶ 3.

6

Thus, the taxes were not payable without penalty and were antecedent debts for the purposes of section 547(a)(4). As set forth in the parties' *Joint Statement Regarding Wyoming Taxation Statutes* (the "Joint Statement"),[25] Wyoming imposes **a series of penalties on taxpayers and their agents who fail to pay ad valorem tax on production when it is due**. Individually, each of these penalties is sufficient to render the 2016 Ad Valorem Taxes antecedent debts under section 547(a)(4) and, collectively, leave no room for doubt that this requirement is satisfied.

### *February 8, 2016*

The first penalty to which taxpayers are exposed for noncompliance with Wyoming's ad valorem taxation statutes occurs if, on or before the second Monday in February, *i.e.*, February 8, 2016, the take in-kind interest owner, *i.e.*, Plaintiff, fails to "provide the operator an annual summary of monthly volumes taken in kind by property name and by property identification number as assigned by the Mineral Tax Division."[26] The purpose of this exchange of information is "to minimize erroneous reporting."[27] The penalty that may be imposed upon the take in-kind interest owner for such failure is "a penalty of up to $1000 per property."[28]

### *February 25, 2016*

A second penalty may be imposed if the taxpayer fails to file reports for ad valorem purposes required under chapter 14 of Wyoming's Taxation and Revenue Code, in which case the taxpayer may be subject to "a penalty equal to a total of one percent (1%) of the taxable value of the production from the well, mine or mining claim but not to exceed five thousand dollars

---

[25] *See, e.g.*, Campbell Docket No. 35.

[26] 011-0005-6 Wyo. Code R. § 6(b)(i).

[27] *Id.* § 6(b).

[28] *Id.* § 6(b)(iii).

($5,000.00) for each calendar month or portion thereof that the report or information is late."[29]

One such report is described at Wyo. Stat. § 39-14-207(a)(i):

> Annually, <u>on or before February 25</u> of the year following the year of production any person whose crude oil, lease condensate or natural gas production is subject to W.S. 39-14-202(a) shall sign under oath and submit a statement listing the information relative to the production and affairs of the company as the department may require to assess the production.[30]

<em><u>November 10, 2016</u></em>

In addition to the foregoing penalties, Wyoming's ad valorem taxation statutes include a provision that penalizes noncompliance with requirements for which no other penalty is provided. This catch-all provision is set forth at Wyo. Stat. § 39-13-108(c)(i)(A), which provides that:

> Any officer neglecting or refusing to comply with <u>any requirement</u> of this act for which <u>no other penalty</u> is provided, may be fined not to exceed one thousand dollars ($1,000.00) to be recovered against him and his sureties.[31]

The fine provided for in Wyo. Stat. § 39-13-108(c)(i)(A) would be a penalty directly against a taxpayer such as Vanguard due to its indemnification obligations to its officers.[32]

Thus, this catch-all provision exposed Plaintiff to penalties for its failure to pay the first-half installment of the 2016 Ad Valorem Taxes by the date it was due and payable, *i.e.*, November 10, 2016, a requirement for which Defendants have argued (wrongly) at length that no other penalty is applicable.[33] In light of the foregoing series of penalties, the 2016 Ad Valorem Taxes

---

[29] Wyo. Stat. § 39-13-108(c)(ii)(C); *see also id.* § 39-14-208(d)(ii) (imposing the same penalties).

[30] *Id.* § 39-14-207(a)(i) (emphasis added).

[31] Wyo. Stat. § 39-13-108(c)(i)(A) (emphasis added).

[32] *See Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 658 (6th Cir. 2002) (recognizing that an "indemnity relationship" may create "an identity of interests between the debtor and the third party . . . such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate"). The Debtors owed indemnification obligations to their directors, officers, and managers under state law, their organizational documents, and employment agreements. *Order Confirming Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* ¶ FF [Docket No. 1109] (the "<u>Confirmation Order</u>").

[33] Other requirements the violation of which would result in a penalty applicable to Vanguard under the catch-all provision include the requirement that "[a]ll Ad Valorem taxes on the gross product from an oil or gas property

were antecedent debts long before they were paid by Plaintiff on January 31, 2017.

Finally, in connection with the catch-all penalty, Plaintiff notes that the imposition of penalties upon its officers is precisely one of the consequences that Vanguard sought to avoid by filing its motion for the entry of the Court's *Final Order Authorizing Payment of Certain Prepetition and Postpetition Taxes and Fees* (the "Taxes Order") [Docket No. 59]:

> Vanguard believes that any failure to pay the Taxes and Fees could materially disrupt Vanguard's business operations in several ways . . . certain of Vanguard's directors and officers could be subject to claims of personal liability, which would likely distract those key employees from their duties related to Vanguard's restructuring . . . .
>
> ****
>
> [P]rompt payment of Taxes and Fees will eliminate the potential for actions against Vanguard's directors and officers for unpaid Taxes and Fees.[34]

>    2.    Taxes Are Antecedent Debts Once They Are Due and Payable; Section 547(a)(4) Was Intended to Protect Against the Recovery of Estimated Taxes.

The Preference Defendants' interpretation of section 547(a)(4) misunderstands the meaning of "penalty" as it is used therein. In *United States v. Ripley (In re Ripley)*,[35] the Fifth Circuit examined the statute's legislative history and determined that a tax is an antecedent debt once it is *payable*; the statute thus prevents the avoidance as preferences of **early** payments made on taxes. Thus, the Preference Defendants' arguments regarding what constitutes a penalty under state law ignore the greater context of the inquiry. Because the 2016 Ad Valorem Taxes were last due and *payable* on December 31 (after which the accrual of interest at a rate of 18% per year was

---

attributable to any working or non-working interest owner shall be remitted by the interest owner or may be remitted on behalf of the interest owner in proportion to his ownership interest by the operator." 011-0005-6 Wyo. Code R. § 6(a)(i).

[34] *Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing Payment of Certain Prepetition and Postpetition Taxes and Fees* ¶¶ 22–23 [Docket No. 8].

[35] 926 F.2d 440 (5th Cir. 1991).

unavoidable) they were antecedent debts when subsequently paid on January 31.

In *Ripley*, the Fifth Circuit interpreted section 547(a)(4) in addressing whether the *estimated* income and self-employment taxes owed by the debtors in that case had become payable while the case was pending, which would have allowed the IRS to file a proof of claim under section 1305(a) of the Bankruptcy Code.[36] Relying on section 547(a)(4), the debtors argued that three-quarters of the taxes became payable prepetition for the purposes of section 1305(a) because penalties for underpayment of the estimated quarterly taxes began accruing at the end of each quarter and only the final quarter ended while the case was pending.[37]

In rejecting the Ripleys' argument, the Fifth Circuit quoted a passage of section 547(a)(4)'s legislative history, which states that section 547 "will not apply to permit the trustee to recover estimated tax payments by a debtor, *because no tax is due when the payments are made*."[38] The full quoted-passage is even clearer:

> This provision will not apply to permit the trustee to recover estimated tax payments by a debtor, because *no tax is due when the payments are made.* Therefore, ***the tax on account of which the payment is made is not an antecedent debt***.[39]

Conversely, the Fifth Circuit reasoned, "Congress understood the phrase 'when such tax is last payable without penalty' in Section 547(a)(4) to mean **when the return was last due**."[40]

In light of the foregoing, the Preference Defendants' formalistic scrutiny of what

---

[36] *Id.* at 443–44. Section 1305(a) provides, in pertinent part, that "[a] proof of claim may be filed by any entity that holds a claim against the debtor—(1) for taxes that become payable to a governmental unit while the case is pending." 11 U.S.C. § 1305(a). In *Ripley*, the relevant provision of the Internal Revenue Code allowed the debtors to "estimate their tax liability and make four quarterly installment payments." 926 F.2d at 441–42.

[37] *Ripley*, 926 F.2d at 442–44, 47.

[38] *Id.* at 448 (quoting H.R. Rep. No. 95-595, at 373 (1978)).

[39] *AERFI Grp. plc v. Barstow (In re MarkAir, Inc.)*, 240 B.R. 581, 591–92 (Bankr. D. Alaska 1999) (bold emphasis added) (quoting H.R. Rep. No. 95-595, at 373 (1978)).

[40] *Ripley*, 926 F.2d at 448 n.28 (emphasis added).

constitutes interest or a penalty under state law obscures the greater context of section 547(a)(4). Congress intended for the date on which taxes are last due and payable to be the relevant inflection point, rather than inconsistent distinctions among the states between interest or penalties imposed upon delinquent taxes. Indeed, the Bankruptcy Code contemplates, and the Fifth Circuit recognizes, that "interest payable in respect of a tax debt is a penalty," even if it is merely "in compensation for actual pecuniary loss," for example under section 507(a)(8)(G).[41]

Unlike in *Ripley*, the payments required under Wyo. Stat. § 39-13-108(b)(i) are not estimated payments, but rather are true payments of the tax itself. Wyoming law is clear that the first installment is due and payable on November 10, after which it becomes delinquent and the taxpayer is penalized by incurring 18% interest thereon, which may only be avoided if both installments are paid by December 31.[42] Vanguard made no payment on the 2016 Ad Valorem Taxes by December 31, 2016. The first installments were delinquent from November 11, 2016, until paid on January 31, 2017. Vanguard was penalized by incurring 18% interest on the unpaid taxes throughout the delinquency. Thus, the 2016 Ad Valorem Taxes constituted antecedent debts under section 547(a)(4) when the Preferential Transfers were made.

3.  Controlling Fifth Circuit Precedent Demonstrates that Interest on Unpaid Taxes Constitutes a Penalty.

Wyoming's 18% interest rate on delinquent taxes constitutes a penalty under the Fifth Circuit's *Hardee* analysis. Although the context of *Hardee* involved different taxes and different issues, the Preference Defendants argue that this Court's application of section 547(a)(4) is

---

[41] *Hardee v. IRS (In re Hardee)*, 137 F.3d 337, 342 (5th Cir. 1998).

[42] Wyo. Stat. § 39-13-108(b)(i)–(iii). Importantly, Wyo. Stat. § 39-13-108(b)(ii) states that "any tax not paid as provided by paragraph (i) of this subsection," *i.e.*, the paragraph setting forth the dates on which installment payments on ad valorem taxes are due and payable, "is *delinquent* after the day on which it is *payable*," and subparagraph (iii) states that "[t]axes are *delinquent* pursuant to paragraph (ii) of this subsection when a taxpayer or his agent knew or reasonably should have known that the total tax liability was not paid *when due*." *Id.* § 39-13-108(b)(ii)–(iii) (emphasis added).

controlled by *Hardee*. Even if that is the case, the principles discussed in *Hardee* demonstrate that mere interest for actual pecuniary loss relating to unpaid taxes constitutes a penalty under the Bankruptcy Code.

Initially, the Fifth Circuit determined that the increased interest provided for in 26 U.S.C. § 6621(c) for "substantial underpayments" of certain taxes (as opposed to the ordinary rate of interest for underpayments not deemed to be substantial) was not a "penalty" pursuant to a four-factor test.[43] Next, the court concluded that section 523(a)(7) of the Bankruptcy Code was inapplicable.[44] Section 523(a)(7) excepts from discharge any debt:

> [T]o the extent such debt is for a . . . penalty . . . and is not compensation for actual pecuniary loss, other than a tax penalty . . . relating to a tax of a kind not specified in [section 523(a)(1)] . . . .[45]

Finally, the court asked whether the interest was nondischargeable under section 523(a)(1)(A),[46] which excepts from discharge debts specified in section 507(a)(8), *i.e.*, governmental claims for:

> (B) a property tax incurred before the commencement of the case . . . ; [and]
>
> ****
>
> (G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.[47]

Stating that "[t]his court has already determined that interest payable in respect of a tax debt is a penalty 'in compensation for actual pecuniary loss' under § 507(a)(8)(G)," the Fifth Circuit concluded that the interest was part of the underlying nondischargeable tax debt.[48]

---

[43] *Hardee*, 137 F.3d at 340–42.

[44] *Id.* at 342.

[45] 11 U.S.C. § 523(a)(7).

[46] *Hardee*, 137 F.3d at 342.

[47] 11 U.S.C. § 507(a)(8).

[48] *Hardee*, 137 F.3d at 342. The underlying tax debt in *Hardee* was of the kind specified in section 507(a)(8)(A)(ii). *Id.*

Accordingly, the court held in *Hardee* that the interest on the underlying tax debt *was* a penalty (for pecuniary loss) for the purposes of sections 507(a)(8)(G) and 523(a)(1)(A).[49] Yet, without any reasoned basis, the Preference Defendants argue that the Fifth Circuit's characterization of interest on a tax debt specified in section 507(a)(8) as a penalty, *which also includes the kind of interest at issue in this case*,[50] is entirely irrelevant for the purposes of determining whether taxes are payable without penalty under section 547(a)(4).

The Preference Defendants' argument is untenable. In *Jones v. United States (In re Garcia)*,[51] the Fifth Circuit expressly recognized that "[i]nterest on unpaid taxes accrues as a penalty, to repay the government and the public, for the loss of the use of the money they suffer while the delinquent taxpayer refuses to pay."[52] That principle applies with equal force in this case under section 547(a)(4).

    4.    <u>Wyoming's 18% Interest Rate on Unpaid Ad Valorem Taxes is a Penalty Under *Hardee's* Four-Factor Test.</u>

Thus, in the Fifth Circuit, even interest charged for pecuniary loss is a "penalty" for the purposes of the Bankruptcy Code. Moreover, if Wyoming's 18% interest rate on unpaid ad valorem taxes is not a *pecuniary loss* <u>penalty</u> on unpaid taxes under section 507(a)(8)(G) as described in *Hardee* and *Garcia*, then it must be a penalty to coerce taxpayer compliance with Wyoming's ad valorem taxation statutes (and to *punish* noncompliance) under *Hardee's* four-factor test.[53] The factors include: "(1) the language of the provision, (2) the form of the sanctions,

---

[49] *Id.*

[50] The 2016 Ad Valorem Taxes are tax debts of the kind specified in section 507(a)(8)(B), listed above.

[51] 955 F.2d 16 (5th Cir. 1992).

[52] *Id.* at 18.

[53] Section 507(a)(8)(G) distinguishes between pecuniary loss and punitive penalties for the purposes of priority among claims because the "enforcement of the penalty claim in bankruptcy on a prior or equal status with general unsecured claims results in punishing other creditors, rather than the debtor." 4 *Collier on Bankruptcy* ¶ 507.11[8] (Richard Levin & Henry J. Sommer eds., 16th ed. 2018).

(3) the confiscatory nature of the sanction, and (4) the legislative history of the provision."[54]

The excessive rate at which Wyoming imposes interest upon unpaid ad valorem taxes pursuant to Wyo. Stat. § 39-13-108(b)(ii) renders the interest a penalty. The rate considered in *Hardee* "ranged between 10.8% and 15.6%,"[55] which at its apex was never greater, and its nadir was substantially less, than the constant rate in this case. Wyoming's 18% interest rate exceeds the rate charged for Vanguard's borrowings as a distressed company from any source, including even its DIP financing facility.[56] Wyoming's interest rate was so coercive that Plaintiff was forced to make the Preferential Transfers on the eve of its bankruptcy case to avoid the continued unsustainable accrual of interest.[57]

As set forth in the Baumgartner Declaration, Wyoming's 18% interest rate is a penalty for noncompliance with timely payment obligations because it significantly exceeds the pecuniary loss to the state from late payment.[58] The table below summarizes the various interest rates on comparable debt offerings during the relevant time periods that Mr. Baumgartner considered in formulating his opinion:[59]

| **Debt** | **Period** | **Interest Rate** |
|---|---|---|
| Wyo. Ad Valorem Taxes | 1998–Present | 18% |
| Short-Term U.S. Treasury Rate | 1996–2017 | 0.60–6.55% |
| U.S. Treasury Borrowing Costs | 1998 | 4.48–5.68% |
| Floating Mortgage Interest Rates (12-Month Resets) | 1998 | 5.378–5.693% |
| Floating Mortgage Interest Rates (1-Year Adjustable Rate) | 1998 | 5.59% |
| Floating Mortgage Interest Rates (15-Year Fixed Rate) | 1998 | 6.59% |

---

[54] *Hardee*, 137 F.3d at 341.

[55] *Id.*

[56] *See* Monroe Declaration ¶ 5.

[57] *See id.* ¶ 6.

[58] Baumgartner Declaration ¶ 6.

[59] *See generally id.*

| Debt | Period | Interest Rate |
|------|--------|---------------|
| Floating Mortgage Interest Rates (30-Year Fixed Rate) | 1998 | 6.95% |
| Wyo. General Fund Tax Notes | 1997–1998 | 3.8% |
| Wyo. General Fund Tax and Revenue Anticipation Notes | 1998–1999 | 3.9% |
| Wyo. County Municipal Debt Issuances | 1990s | 4.75–6.40% |
| LIBOR Floating Rate Loans | 1996–2017 | 0.148–7.813% |
| Prime Rate Floating Rate Loans | 1996–2017 | 3.25–9.50% |
| Federal Funds Rate | 1996–2017 | 0.07–6.54% |
| Credit Card Interest Rates | 1996–2017 | 11.96–15.84% |

As demonstrated above, Wyoming's cost to borrow funds through issuing debt, as well as the similar cost at which Defendants could borrow by issuing municipal debt, was generally less than a quarter of the 18% interest rate charged to non-compliant taxpayers.[60] The 18% interest rate charged on delinquent property taxes is far beyond any rate that would be necessary to compensate Defendants or Wyoming for the delayed collection of taxes.[61]

In addition, at any point in time between 1998 and the Petition Date, it would have been cheaper to borrow money from a number of sources, including even credit cards, than to incur the 18% interest rate.[62] Companies would look to commercial lenders before incurring this penalty rate.[63] This is significant because commercial lenders not only cover their cost of borrowing, but they also price loans at a level designed to return a profit to their stakeholders.[64] At all relevant times, Wyoming and Defendants were charging interest at rates that exceeded the levels commercial banks determined necessary to operate profitably.[65] Thus, the rate set forth in Wyo.

---

[60] *Id.* ¶ 22.

[61] *Id.*

[62] *Id.* ¶ 23.

[63] *Id.*

[64] *Id.*

[65] *Id.*

Stat. § 39-13-108(b)(i) plainly is a "confiscatory" penalty for the purposes of the *Hardee* test.

The Preference Defendants argue at length that the outcome of the *Hardee* inquiry is controlled by state law, citing Wyoming cases and statutes purportedly demonstrating the interest is non-punitive. That argument is belied by the fact that the *Hardee* test is a product of federal common law. If the Preference Defendants were correct, then the test would address *only* the language of the provision (which they admit is not dispositive) and its legislative history (which they admit contains no useful content).[66] However, in determining whether a particular tax is a penalty for the purposes of the Bankruptcy Code, the United States Supreme Court "look[s] behind the label placed on the exaction and rest[s] its answer directly on the operation of the provision using the term in question."[67]

The appropriate resolution of the *Hardee* test must consider the purposes of the operative Bankruptcy Code provisions and "the court's duty to maintain national uniformity in the bankruptcy laws."[68] Indeed, "[t]he supremacy of state law is confined to determining what constitutes perfection of a transfer. The question of whether a transfer is preferential and avoidable . . . is governed by section 547 of the Code."[69] These foundational principles of bankruptcy law would be undermined if states could control their preference exposure by strategically drafting and applying the penalty provisions of their taxation statutes.

Regardless, the cases cited by the Preference Defendants demonstrate the punitive nature

---

[66] *See, e.g.*, *Defendant Board of Campbell County's Commissioners' Motion for Summary Judgment*, at 15, 17 [Campbell Docket No. 40] (the "Campbell Motion") (citing *Hardee*, 137 F.3d at 341; *Bd. of Cty. Comm'rs of the Cty. of Laramie v. Laramie Cty. Sch. Dist. No. 1*, 884 P.2d 946, 956 (Wyo. 1994)).

[67] *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 220 (1996).

[68] *In re Broughton Ltd. P'ship*, 474 B.R. 206, 213 n.15 (Bankr. N.D. Tex. 2012); *see also In re Pilgrim's Pride Corp.*, 421 B.R. 231, 236 (Bankr. N.D. Tex. 2009) ("To apply differing state laws to determine entitlement to priority treatment . . . would run contrary to the constitutional mandate for uniformity . . . .").

[69] 5 *Collier on Bankruptcy* ¶ 547.05[2] (Richard Levin & Henry J. Sommer eds., 16th ed. 2018); *accord Woodson v. City Fin. Co. (In re Holloway)*, 132 B.R. 771, 773 (Bankr. N.D. Okla. 1991) (citing U.S. Const. art. VI, § 2).

of the interest. They assert that the Wyoming Supreme Court characterized the state's 18% interest rate on unpaid ad valorem taxes as non-punitive, but the cases they cited indicate that the opposite is true.[70] In one case, the Wyoming Supreme Court observed that the 18% interest rate (1) assures compliance with a self-reporting scheme lacking any other enforcement mechanism and (2) prevents taxpayers from being "unjustly rewarded" by abusing the self-reporting system:

> Given the fact that the Wyoming [ad valorem] taxing statutory scheme relies upon reporting by taxpayers, the existence of the assessment of statutory interest provides an incentive to assure the taxpayer truly and accurately submits the required reports. The imposition of statutory interest will also ensure that taxpayers who improperly file inaccurate reports or attempt to delay the taxing process are not unjustly rewarded.[71]

In the other case cited by the Preference Defendants, the Wyoming Supreme Court observed that "[t]he purpose of interest is to serve 'as compensation for the use of money, *or as a penalty*,'" and that the interest imposed upon unpaid ad valorem taxes serves to prevent taxpayers from "undervalue[ing] gross production *without risk of penalty*."[72]

In the unambiguous words of the United States Supreme Court, the foregoing purposes attributed to the 18% interest rate by the Wyoming Supreme Court itself renders it a penalty: "if the concept of penalty means anything, it means punishment for an unlawful act or omission, *and a punishment for an unlawful omission is what this exaction is*."[73] Accordingly, the 18% interest rate imposed upon unpaid ad valorem taxes under Wyoming law is a penalty for the purposes of section 547(a)(4).

---

[70] *See* Campbell Motion, at 16–17; *Defendants' Motion for Summary Judgment* ¶ 77 [Johnson Docket No. 26] (the "Johnson Motion"). As the Johnson Motion is identical to each of the summary judgment motions filed in its sister-counties' cases, excluding Campbell County, Plaintiff cites to the Johnson Motion as a proxy for all such identical motions.

[71] *Amoco Prod. Co. v. Bd. of Cty. Comm'rs of Cty. of Sweetwater*, 55 P.3d 1246, 1257 (Wyo. 2002).

[72] *Kunard v. Enron Oil & Gas Co.*, 869 P.2d 132, 135 (Wo. 1994) (emphasis added).

[73] *Reorganized CF & I Fabricators*, 518 U.S. at 224 (emphasis added) (concluding that the tax at issue therein constituted a penalty for the purposes of (then) section 507(a)(7) of the Bankruptcy Code).

### C.     Avoidance and Recovery of the Preferential Transfers Will Benefit Creditors of Plaintiff's Estate Directly and Indirectly.

The Preference Defendants make several arguments that Plaintiff's preference claims are barred under section 550(a) because no benefit to the estate is possible. Each of their arguments fails. The avoidance and recovery of the Preferential Transfers would benefit the creditors of Plaintiff's estate both directly and indirectly. At a minimum, however, Defendants' arguments raise disputed issues of material fact that render summary judgment inappropriate as a matter of law, as stated above. Vanguard is entitled to present evidence at a trial on the merits to prove the existence of a benefit to the estate under section 550(a).

First, they argue that the estate ceased to exist post-confirmation, but admit (fatally to their argument) that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, *other than for matters pertaining to the implementation or execution of the plan*."[74] More importantly, "[i]f this argument were accepted at face value, it would mean that [avoidance] claims could never be brought once a bankruptcy plan had been confirmed. This would destroy the purpose behind Section 1123(b)(3)(B), which 'authorizes post-confirmation pursuit of a debtor's causes of action.'"[75]

Second, they argue that no benefit to the estate is possible because Plaintiff's bankruptcy case was closed pursuant to the *Final Decree Closing Certain Chapter 11 Cases Pursuant to Bankruptcy Code Section 350(a) and Bankruptcy Rule 3022* (the "Final Decree").[76] As explained in the *Reorganized Debtors' Motion Under Bankruptcy Rule 9024 Regarding Relief from Final*

---

[74] *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Texas, Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001) (emphasis added); *see also* Campbell Motion, at 38–39.

[75] *U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*, 479 B.R. 405, 414 (N.D. Tex. 2012). The Debtors' avoidance actions vested in the Reorganized Debtors pursuant to article IV.O of the Plan.

[76] *In re Vanguard Operating, LLC*, Ch. 11 Case No. 17-30561 (Bankr. S.D. Tex. Nov. 9, 2017), ECF No. 9.

*Decree* [Docket No. 2295] (the "Motion for Relief"),[77] the Final Decree had "purely an administrative and non-jurisdictional" effect.[78] It did not, nor was it intended to, affect the closure of the "umbrella litigation" or "overall spectrum of legal action" comprising the "case" triggered by the Reorganized Debtors' chapter 11 petitions.[79] Logically, therefore, it also did not "terminate" the estate for the purposes of Plaintiff's preference claims. Rather, it expressly preserved these actions: "[a]ll contested matters or adversary proceedings that have been filed or that may be filed in the future shall be administered in the Lead Case."[80] The Final Decree cannot be interpreted to preserve these actions on one hand and moot them on the other hand.

The Preference Defendants' argument fails even if Plaintiff's estate were technically "terminated." The "estate" as used in section 550(a) "denotes the set of all potentially interested parties," including creditors.[81] Distributions to creditors of Plaintiff's estate, which are funded through, among other sources, "any encumbered and unencumbered Cash on hand,"[82] are not yet complete.[83] Recipients of payments from these sources include, *e.g.*, "Allowed Other Priority Claims."[84] Thus, Plaintiff's recovery of the Preferential Transfers will benefit the estate by funding payments to creditors. Defendants' theoretical argument cannot overcome this practical reality.

Former unsecured creditors of Plaintiff's estate who converted their claims to new equity in Vanguard Natural Resources, Inc., stand to benefit as well. For example, in *P.A. Bergner & Co.*

---

[77] Plaintiff expressly incorporates by reference herein the arguments that it made in its Motion for Relief.

[78] Hr'g Tr. at 6:12–13, Nov. 9, 2017.

[79] *See generally* Motion for Relief ¶¶ 7–9 (quoting *Term Loan Holder Comm. v. Ozer Grp., L.L.C. (In re Caldor Corp.)*, 303 F.3d 161, 168 & n.3 (2d Cir. 2002)).

[80] Final Decree ¶ 2.

[81] *Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290, 293 (7th Cir. 2003) (emphasis added).

[82] Plan § IV.C.

[83] *See, e.g.*, *Chapter 11 Post-Confirmation Report for the Quarter Ending December 31, 2018* [Docket No. 2008] (reflecting disbursements on account of only administrative and class 9 claimants).

[84] *See* Plan §§ I.A.166, III.B.3 (defining and providing for the treatment of Other Priority Claims).

*v. Bank One, Milwaukee, N.A. (In re P.A. Bergner & Co.)*,[85] the Seventh Circuit held that the benefit requirement of section 550(a) was satisfied in a preference action where the recovery would directly benefit the reorganized debtor and, therefore, indirectly benefit unsecured creditors of the debtor's estate who received equity interests in the reorganized debtor.[86]

Under the Plan, approximately $450 million of Senior Notes that were guaranteed by Plaintiff and held by its unsecured creditors were converted into reorganized equity.[87] Thus, "[r]ecovery in this preference action will benefit reorganized [Vanguard] . . . which in turn will benefit the owners of reorganized [Vanguard] . . . . This is enough . . . to satisfy the requirements of § 550."[88] Indeed, "the Code clearly contemplates the use of avoidance action recoveries in the operation of the business in a manner which only indirectly benefits creditors."[89]

Finally, the Preference Defendants argue that no benefit will result from a recovery under section 550(a) because they intend to file claims in the amount of any such recovery under section 502(h) of the Bankruptcy Code, but admit that the Reorganized Debtors' personal liability under section 502(h) is extinguished under section 1141(d) of the Bankruptcy Code. Indeed, confirmation of the Plan discharged Vanguard "from any debt that arose before the date of such confirmation, and any debt of a kind specified in section . . . 502(h)," regardless of whether:

---

[85] 140 F.3d 1111 (7th Cir. 1998).

[86] *Id.* at 1118.

[87] *See Second Amended Plan Supplement for Second Amended Joint Plan of Reorganization of Vanguard Natural Resources, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code*, Ex. 11, at 9 [Docket No. 1083] (exhibiting Vanguard's corporate structure); *Disclosure Statement Relating to the Second Amended Joint Plan of Reorganization of Vanguard Natural Resources, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code*, at 5, 20–21 [Docket No. 892] (explaining that the Plan provided for holders of Senior Notes Claims to receive shares of New Common Stock in exchange for their notes); *see also* Plan § III.B.6.

[88] *P.A. Bergner & Co.*, 140 F.3d at 1118.

[89] *Trans World Airlines v. Travellers Int'l AG. (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 972 (Bankr. D. Del. 1994); *see also Mt. McKinley Ins. Co. v. Lac D'Amiante Du Quebec LTEE (In re ASARCO LLC)*, 513 B.R. 499, 506 (S.D. Tex. 2012) ("[C]ourts have given a very broad construction to the phrase 'benefit of the estate.' Benefit for purposes of § 550 includes both direct benefits to the estate (*e.g.*, an increased distribution) and indirect ones (*e.g.*, an increase in the probability of a successful reorganization).").

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan.[90]

The Plan and Confirmation Order both expressly incorporate the discharge of section 502(h) claims under section 1141(d).[91] Thus, the Reorganized Debtors would have no liability for the Preference Defendants' hypothetical claims under section 502(h).

The Preference Defendants' argument that the *estate* is still exposed to section 502(h) claims (notwithstanding their prior arguments that the estate was terminated) are foreclosed by sections 1141(b) and 1141(c) of the Bankruptcy Code. Confirmation of the Plan "vest[ed] all of the property of the estate" in the Reorganized Debtors pursuant to section 1141(b) and "property dealt with by the plan is free and clear of all claims and interests of creditors" pursuant to section 1141(c).[92] The Plan and Confirmation Order expressly implement these provisions.[93]

More importantly, "[e]xcept as otherwise provided in the Plan or [the] Confirmation Order," the Preference Defendants' claims were "satisfied, discharged, **and released in full**," as of the Effective Date.[94] But, even if their hypothetical section 502(h) claims were not released, they point to no Plan provision establishing a reserve through which payments on section 502(h) claims allowed after the Effective Date (and after property of the estate vested in the Reorganized Debtors free and clear of all claims and interests) would be funded.

---

[90] 11 U.S.C. § 1141(d)(1)(A).

[91] *See* Confirmation Order ¶¶ 34–35; Plan § VIII.B.

[92] 11 U.S.C. § 1141(b)–(c).

[93] *See* Confirmation Order ¶¶ 17, 34–35; Plan §§ IV.E, VIII.B.

[94] Confirmation Order ¶ 35 (emphasis added).

### D.      The Closing of Plaintiff's Bankruptcy Case Did Not Extinguish These Causes of Action.

The Preference Defendants extensively argue that the Plaintiff's preference claims are barred under section 546(a) and 550(f) because the Final Decree closed its case and, despite leaving the Lead Case open, did not substantively consolidate the Reorganized Debtors. It is unnecessary to repeat at length the arguments that Vanguard asserted in its Motion for Relief, which are incorporated herein by reference. As explained therein, because the Final Decree did not close the overall "case" comprising these multi-debtor corporate restructurings, which were and remain jointly administered under the Lead Case, sections 546(a) and 550(f) are no bar to these actions and it was unnecessary for the Court to expressly override the effects of those provisions, contrary to Defendants' arguments.[95]

To the extent that Plaintiff's claims should otherwise be barred by those statutes of limitations, the Preference Defendants' arguments that the Final Decree merely leaves the Lead Case open without preserving Plaintiff's claims ignores its plain language:

> All contested matters or adversary proceedings that have been filed or that may be filed in the future shall be administered in the Lead Case, notwithstanding the fact that such contested matters or adversary proceedings may be asserted on behalf of or against a Fully Administered Debtor. Nothing in this Final Decree shall affect the substantive rights of any party in interest, including the Fully Administered Debtors.[96]

Thus, the Final Decree expressly preserved Plaintiff's "substantive rights,"[97] which included its rights to assert these preference claims as they existed immediately before the Final Decree was

---

[95] Moreover, it is unclear how substantive consolidation, which "entails combining the assets and liabilities of separate and distinct entities into a single pool and treating those assets and liabilities as if they belong to one entity," would be necessary to preserve these claims. *In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 693 (Bankr. S.D. Tex. 2009).

[96] Final Decree ¶ 2.

[97] Defendants' argument that the statutes of limitations somehow vest them with "substantive rights" that are preserved under the Final Decree contradicts Fifth Circuit law that, "[a]s a general proposition, statutes of limitation are regarded as procedural." *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1381 (5th Cir. 1987).

entered. The Preference Defendants' arguments that the Final Decree somehow carved out chapter 5 avoidance actions from "**all**" adversary proceedings, or subsequent adversary proceedings filed by Plaintiff from those "**that may be filed in the future**" whether "**on behalf of or against a Fully Administered Debtor**," are baseless.[98]

Accordingly, even if the Final Decree were flawed, the Preference Defendants are bound by it under the doctrine of res judicata because their statute of limitations defenses arise out of the same transaction that was subject to the order, despite their arguments to the contrary.[99] Res judicata requires that "the same cause of action must be involved in both cases."[100] The Fifth Circuit applies this requirement through the "transactional test" of the Restatement (Second) of Torts, which asks whether the issues in the subsequent proceeding "arose out of the same transaction that was the subject of the bankruptcy court's [prior] order."[101] The Preference Defendants' argument that this test is not satisfied simply reframes their prior argument that the Final Decree did not address potential chapter 5 avoidance actions asserted by Plaintiff in future adversary proceedings, and fails for the reasons stated above.

Nonetheless, the Preference Defendants argue that the Final Decree should not be forced pursuant to the "due process exception" to res judicata, which merely reframes their original argument (again). Essentially, they argue that it was unclear that one of the "intended effect[s]" of the Final Decree was to allow Plaintiff to assert chapter 5 avoidance actions in future adversary

---

[98] Final Decree ¶ 2 (emphasis added).

[99] *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987) (holding that where a creditor fails to object to, or appeal from, a final bankruptcy court order, "[r]egardless of whether [a] provision [of the order] is inconsistent with the bankruptcy laws," a challenge to the "propriety or legality" of the order is "foreclosed").

[100] *United Indep. Sch. Dist. v. Vitro Asset Corp. (In re Vitro Asset Corp.)*, 656 F. App'x 717, 724 (5th Cir. 2016).

[101] *Id.* (quoting *Shoaf*, 815 F.2d at 1054).

proceedings, therefore they could not present their objections to such relief.[102] As explained above, this effect was clear on the face of the order.[103] Thus, their argument fails.[104]

Accordingly, the Final Decree should be enforced as written unless it resulted from an egregious jurisdictional error, or violated fundamental due process rights, in which case Plaintiff is entitled to relief from the order as a void judgment under Federal Rule of Civil Procedure 60(b)(4) as set forth in Vanguard's Motion for Relief. Voiding the judgment, rather than dismissing the causes of action, would honor the animating principle of Rule 60(b)(4): to allow for the full and fair litigation of claims—not their dismissal.[105] Critically, the Preference Defendants' anticipatory response to Plaintiff's Motion for Relief entirely discounts the possibility that relief is available under subsection (b)(4) of Rule 60 and fails to make any arguments thereunder. Therefore, it is no barrier to the entry of an order granting Plaintiff's Motion for Relief.

## II.   THE SATISFIED CLAIM.

Defendant Campbell County Commissioners admit that Claim 311, which it filed for the second-half installment of the 2016 Ad Valorem Taxes, has been satisfied, yet argues that the claim should not be disallowed (and provides no explanation as to why it opposes disallowance of a satisfied claim). Section 502(b)(1) of the Bankruptcy Code provides that a proof of claim may not

---

[102] *See, e.g.*, Johnson Motion ¶ 102 (citing *Kleibrink v. Kleibrink (In re Kleibrink)*, 621 F.3d 370, 371 (5th Cir. 2010)).

[103] The relevant language was included in the proposed form of order filed with the Court at Docket No. 1502.

[104] Even if the Preference Defendants were not given an adequate opportunity to object to the Final Decree, they have suffered no harm. The rigorous process that they have been afforded to interpose these objections proves that they have not been denied any of the substantive or procedural rights or protections the deprivation of which the statutes of limitations contained in sections 546(a) and 550(f) are intended to protect against. To dismiss these claims as the Preference Defendants request would provide a remedy where there is no harm.

[105] *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981) ("Rule 60(b) will be liberally construed in favor of trial on the full merits of the case."); *Assmann v. Fleming*, 159 F.2d 332, 336 (8th Cir. 1947) (noting "[i]t is elementary that courts favor the trial of causes of action upon their merits" in describing the role of Rule 60(b)); *Tozer v. Charles A. Krause Mill. Co.*, 189 F.2d 242, 245 (3d Cir. 1951) (internal citations and quotation marks omitted) ("[C]ases applying Rule 60(b) have uniformly held that it must be given a liberal construction. . . . [a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits.").

be allowed to the extent that "such claim is enforceable against the debtor and property of the debtor." A satisfied claim must be disallowed because it can no longer be enforced against the debtor or its property. Numerous proofs of claim have been disallowed in this case because they were satisfied.[106] If the claim were allowed, then it would afford Defendant an impermissible double-recovery on a claim that was already paid.

Count VII of Plaintiff's Complaint served as an objection to Defendant's claim under Federal Rule of Bankruptcy Procedure 3007(b). Defendant's argument to the contrary willfully ignores the plain meaning of the count. Therefore, Defendant's claim must be disallowed.

## III.   THE IMPROPER DISTRIBUTION.

### A.   Counts I and III of Plaintiff's Complaint Properly Invoke the Court's Equitable Powers to Claw Back the Improper Distributions.

Defendants fail to recognize that after confirmation of the Plan the only possible entitlement that they had to payment of *any* prepetition claims, including the 2017 Ad Valorem Taxes, was to whatever payments were authorized under the Plan. "[T]he distributions, rights, and treatment that are provided in the Plan [were] in complete satisfaction, discharge, and release" of all prepetition claims against the Debtors.[107]

Thus, Defendants' premise that their claims survived confirmation, even if the Debtors' personal liability was discharged, is false. Their claims were released in exchange for the treatment that they were entitled to receive under the Plan. Had they filed timely proofs of claim, they would have been entitled to distributions. Because they failed to do so, they were not, and they are barred under the Plan from filing late proofs of claim absent the entry by the Court of an order expressly

---

[106] *See, e.g.*, *Order Granting Reorganized Debtors' Nineteenth Omnibus Objection to Claims (Satisfied Claims, Amended Claims, Late Filed Claims, and No Liability Claims)* ¶ 1 [Docket No. 1941] (disallowing more than fifty satisfied claims listed on Schedule 1 thereto).

[107] Plan § VIII.B.

allowing such filings.[108] What Defendants are effectively trying to accomplish by retaining the Improper Distributions is a setoff of mutual debts, which is also barred under the Plan and the Bankruptcy Code.[109] Accordingly, Defendants' entire scheme is a complete violation of the terms of the Plan and the Bankruptcy Code.

Even if, as Defendants argue, the Plan only discharged the Debtors' personal liability and the underlying claims still exist, the fact remains that the Plan controlled how the claims were to be paid. Defendants' argument that the Reorganized Debtors have made post-confirmation payments not specifically provided for in the Plan ignores the fact that the satisfaction of all prepetition claims is governed by the Plan.

As a payment of a prepetition claim, the Improper Distributions were necessarily governed by the terms of the Plan. Because Defendants did not file timely proofs of claim, they did not have allowed claims for the 2017 Ad Valorem Taxes, they were not entitled to payment of the same, and the distributions were made contrary to the terms of the Plan.[110]

Under section 1141(a) of the Bankruptcy Code, "the provisions of a confirmed plan bind the debtor . . . and any creditor,"[111] including Defendants, who now seek to retain payments that were made in contravention of the Plan. There is no basis in the Bankruptcy Code for Defendants' position that they are entitled to disregard and violate these rules.

Accordingly, the Court's equitable powers under section 105(a) of the Bankruptcy Code

---

[108] *Id.* § VII.G. Moreover, the logical extension of Defendants' argument is that if an unsecured creditor who *did* file a proof of claim and were entitled to a partial recovery on its claim wrongly received payment in full, it would be entitled to retain the overpayment. Plainly, it would not be entitled to retain the overpayment, just as Defendants are not entitled to retain the Improper Distributions.

[109] *Id.* § VIII.G; 11 U.S.C. § 524(a)(2)–(3).

[110] *See* Plan § I.A.29 ("For the avoidance of doubt, a Proof of Claim filed after the applicable Bar Date shall not be Allowed for any purpose whatsoever absent entry of a Final Order allowing such late-filed Claim.").

[111] 11 U.S.C. § 1141(a).

form the basis for Plaintiff's causes of action against Defendants for declarations of improper plan distributions, the remedy for which is disgorgement. Pursuant to section 105(a), the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[112] This power shall be exercised "in a manner consistent with the provisions of the Bankruptcy Code" and "authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code."[113]

Indeed, "[section] 105 of the Code authorizes federal courts to order damages for violations of § 524 when necessary—i.e., disgorgement of unjust profit."[114] As explained below, Defendants knowingly and intentionally violated section 524. Thus, Defendants' semantic arguments regarding the existence of causes of action for declarations of improper plan distributions and the nature of disgorgement as a remedy are wrong and improperly elevate form over substance. At bottom, the payments Defendants received (and solicited via invoices in violation of the Plan and discharge injunctions) were inconsistent with the provisions of the Plan and the Bankruptcy Code, and the Court's equitable powers authorize it to declare that the payments were improper distributions and order that they be disgorged.

    **B.**    **Defendants Were Unjustly Enriched by the Improper Distributions Because They Violated the Plan and Discharge Injunctions to Obtain Payment of Discharged Claims.**

"The basis of unjust enrichment is that one has funds belonging to another which equity and good conscience demand ought to be paid to the other."[115] Defendants need not have

---

[112] 11 U.S.C. § 105(a).

[113] *United States v. Sutton*, 786 F.2d 1305, 1307–08 (5th Cir. 1986).

[114] *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 447 (1st Cir. 2000).

[115] *Ward v. First Interstate Bank of Riverton*, 718 P.2d 886, 889 (Wyo. 1986) (citing Restatement (First) of Restitution § 1 (Am. Law Inst. 1937); *Cohon v. Oscar L. Paris Co.*, 149 N.E.2d 472 (Ill. App. Ct. 1958)).

committed fraud or tortious conduct.[116] Rather, the term "unjust enrichment" is used "to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor."[117] Defendants' actions gave rise to such circumstances in this case.

"Section 524 of the Bankruptcy Code provides a debtor with a discharge, which 'operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor.'"[118] Upon confirmation of and pursuant to the Plan, Defendants were "**permanently enjoined**" from taking "**any action . . . on account of or in connection with or with respect to**" their claims.[119] Thus, by invoicing Plaintiff for the 2017 Ad Valorem Taxes more than a month after the Effective Date of the Plan, Defendants knowingly and intentionally violated the Plan and discharge injunctions. "Even if a creditor's [right to payment] survives the bankruptcy discharge, sending a letter seeking payment from the discharged debtor is a violation of the discharge injunction."[120]

Accordingly, equity and good conscience demand the payments be disgorged in light of Defendants' actions. As this Court stated in *Fauser v. Green Tree Servicing, LLC (In re Fauser)*:[121]

> *The discharge injunction must be enforced if it is to provide any meaningful protection to debtors*. Though the injunction is statutory in nature, its effect is equivalent to that of a court order. Accordingly, the consequences for violating the discharge injunction are identical to the consequences attendant to violating a

---

[116] *Landeis v. Nelson*, 808 P.2d 216, 217 (Wyo. 1991).

[117] *Id.* (*Bereman v. Bereman*, 645 P.2d 1155, 1160 (Wyo. 1982)).

[118] *Jimenez v. Navient Solutions, LLC (In re Jimenez)*, Ch. 13 Case No. 10-80693, Adv. No. 17-08008, 2017 WL 5592260, at *3 (Bankr. S.D. Tex. Nov. 20, 2017) (Isgur, J.) (quoting 11 U.S.C. § 524(a)(2)).

[119] Plan § VIII.H.

[120] *Hernandez v. Caliber Home Loans, Inc. (In re Hernandez)*, Ch. 7 Case No. 12-37496, Adv. No. 14-03213, 2014 WL 5794840, at *3 (Bankr. S.D. Tex. Nov. 6, 2014) (Isgur, J.).

[121] 545 B.R. 907 (Bankr. S.D. Tex. 2016) (Isgur, J.).

court order, namely, civil contempt.[122]

Indeed, Defendants' own authorities state that "[a] willful violation of the permanent injunction may, in appropriate circumstances, lead to an award of sanctions or a specific injunction. A majority of courts also allow punitive damages in appropriate cases . . . ."[123] Therefore, the Court should order that Defendants disgorge the Improper Distributions.

Defendants' analogy to cases involving statutes of limitations fails.[124] None of those cases involved defendants charged with inequitable conduct, much less with violating a bankruptcy discharge,[125] or otherwise implicated "[t]he purpose of a bankruptcy discharge[, which] is to provide the debtor a fresh start."[126] To allow Defendants to retain the Improper Distributions would unacceptably condone violations of Plaintiff's discharge and frustrate its fresh start.

Accordingly, the bankruptcy cases that defendants cited in support of their analogy to statutes of limitations cases are irrelevant.[127] Those cases address (1) creditors' rights to payment from *third parties* (*e.g.*, insurers and guarantors) that, pre-discharge, were co-liable with the

---

[122] *Id.* at 912 (emphasis added) (citations omitted).

[123] 3 Norton Bankr. L. & Prac. 3d § 58:2 (footnotes omitted).

[124] *See* Campbell Motion, at 47–48.

[125] *See In re S. Shore Co-Operative Ass'n*, 103 F.2d 336, 337 (2d Cir. 1939) (involving payments made pursuant to the order of a referee entered on an application filed by a bankruptcy trustee that was merely untimely); *Clifton Mfg. Co. v. United States*, 76 F.2d 577, 581 (4th Cir. 1935) (involving a payment made on tax collection proceedings that were merely untimely, which proceedings "may well have been taken within the statutory period had [a] delay occasioned by the filing of the taxpayer's brief [for reconsideration of its case] not taken place"); *Jordan* ex rel. *Prappas v. Bergsma*, 822 P.2d 319, 320 (Wash. Ct. App. 1992) (involving a payment made pursuant to a contract to sell property after the statute of limitations on the debt expired). *See generally Bd. of Supervisors of Stephenson Cty. v. Manny*, 56 Ill. 160 (1870) (involving no statutes of limitations issues).

[126] *Hernandez*, 2014 WL 5794840, at *2.

[127] *See* Campbell Motion, at 49–50.

debtors,[128] (2) secured creditors' rights against collateral,[129] whether or not the property was part of the bankruptcy estate,[130] or (3) setoff rights and other unrelated issues.[131] In none of those cases was the debtor's discharge and fresh start at issue, and Defendants have cited no cases in which a reorganized debtor was bound to its payment on a discharged debt.

Indeed, there is a fundamental distinction between the equities of allowing a party to retain payment of a debt that was rendered unenforceable merely by the passage of time versus a debt for which Plaintiff was affirmatively discharged of personal liability (in part because Defendants' own neglect resulted in their failure to preserve their rights) pursuant to legislative policies that are intended to provide relief to honest, but unfortunate debtors.

## C.   The Improper Distributions Were Not Voluntary and the Voluntary Payment Rule Should Not Be Applied.

Defendants' arguments that the Improper Distributions should not be disgorged because they were "voluntary" are disingenuous at best. Payments induced by illegal invoices cannot reasonably be described as "truly voluntary," as Defendants' own authorities state they must be to be protected under section 524(f) of the Bankruptcy Code.[132] Indeed, the case that Defendants most broadly cited for the proposition that they should be allowed to retain the Improper Distributions proves the opposite:

---

[128] *See Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993); *In re Greenway*, 126 B.R. 253 (Bankr. E.D. Tex. 1991); *In re Lembke*, 93 B.R. 701 (Bankr. D.N.D. 1988); *Nauman v. CIT Grp./Equip. Fin., Inc.*, 816 P.2d 883 (Wyo. 1991).

[129] *See Johnson v. Home State Bank*, 501 U.S. 78 (1991); *Claussen Concrete Co. v. Walker (In re Lively)*, 74 B.R. 238 (S.D. Ga. 1987); *Kleibrink*, 346 B.R. 734.

[130] *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225 (5th Cir. 1997).

[131] *Katchen v. Landy*, 382 U.S. 323 (1966) (addressing the intersection of the bankruptcy court's jurisdiction and the Seventh Amendment); *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533 (10th Cir. 1990) (setoff); *Geltzer v. Bloom (In re M. Silverman Laces, Inc.)*, 404 B.R. 345 (Bankr. S.D.N.Y. 2009) (setoff); *Mahoney v. Wash. Mut., Inc. (In re Mahoney)*, 368 B.R. 579 (Bankr. W.D. Tex. 2007) (addressing whether reporting a discharged debt to a credit reporting agency violated the automatic stay); *Lorenzana v. Lorenzana*, Civ. A. No. 05-92-02578, 1994 WL 60755 (Tex. App.—Dallas Feb. 28, 1994, writ denied) (setoff).

[132] *In re Journal Register Co.*, 407 B.R. 520, 533 (Bankr. S.D.N.Y. 2009) (emphasis added).

> The Bank, **having taken no action to collect the debt** . . . had no affirmative duty to determine the voluntariness of the debtors' repayment **and, therefore, did not violate the injunction of § 524(a)(2)** in accepting the debtors' payments.

> The Court finds, accordingly, that the debtors' repayment of the discharged debt to the Bank based upon a mistaken belief that the debt was still owing constituted a voluntary payment under § 524(f) where it was made without any inducement or other collection action by the Bank.[133]

Thus, Defendants' statement that Plaintiff's payments of the 2017 Ad Valorem Taxes were voluntary (particularly where Plaintiff is actively trying to claw back the payments), and nothing "but spontaneous," is blatantly false. When Plaintiff paid Defendants' invoices before realizing that the invoices were issued in violation of the Plan and discharge injunctions, it did so under Defendants' threats to impose an onerous interest penalty for non-payment.[134] Indeed, Defendants' invoices for the 2017 Ad Valorem Taxes contained the same language threatening imposition of Wyoming's 18% interest rate as their invoices for the 2016 Ad Valorem Taxes.[135]

The so-called "voluntary payment rule" that Defendants invoke under Texas law cannot be squared with relevant facts of this case and the applicable provisions of the Bankruptcy Code. The voluntary payment rule is an "equitable defense[]."[136] As explained above, equity demands that Defendants disgorge, not retain, the Improper Distributions. If Defendants were permitted to retain the payments under the voluntary payment rule despite violating the Plan and discharge injunctions, creditors in all bankruptcy cases would be incentivized to invoice debtors for discharged debts with the goal of inducing unwarranted payments free from any repercussions.

Regardless, the principle upon which the rule is founded ("a person who receives payment from another without any protest from the payor should be allowed to rely on use of the funds

---

[133] *Hudson v. Cent. Bank (In re Hudson)*, 168 B.R. 368, 372–73 (Bankr. S.D. Ill. 1994) (emphasis added).

[134] Monroe Declaration ¶ 8.

[135] An example of Defendants' invoices for the 2017 Ad Valorem Taxes is attached hereto as "Exhibit D."

[136] *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005).

without risking a subsequent demand for return of the payment") is inapplicable here because Defendants were not entitled to rely on payments of debts that they illegally procured in violation of a confirmed plan of reorganization.[137] Accordingly, Defendants should be ordered to disgorge the payments.

> **D.      Defendants' Alleged Reliance on the Taxes Order is Implausible on its Face.**

At the risk of belaboring the points made in Plaintiff's Summary Judgment Motions, Plaintiff reiterates that Defendants' alleged reliance on the Taxes Order as a waiver of the requirement that they file proofs of claim for the 2017 Ad Valorem Taxes is foreclosed by the second paragraph of the order:

> [N]othing in this Interim Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of Vanguard's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of Vanguard's rights under the Bankruptcy Code or any other applicable law.[138]

The plain language of the Taxes Order demonstrates the unreasonableness of Defendant's reliance on the Taxes Order to toll the Government Bar Date or otherwise obviate the need for Defendant to file a proof of claim for the 2017 Ad Valorem Taxes.

More importantly, Defendants' own arguments demonstrate that they understood the circumstances pursuant to which the order was entered and which render their post-confirmation reliance on the order for the validity of the payments absurd. Defendants correctly state that "[a]t the commencement of their cases, the Debtors lost the *authority* to pay those 2017 ad valorem

---

[137] *Id.* at 772; *see also* section III.D below discussing Defendants' baseless allegations of reliance on the Taxes Order.

[138] Taxes Order ¶ 2.

taxes owed to each County, stayed by the Bankruptcy Code from payment [of] prepetition claims absent further order of the Court."[139] Indeed, the Debtors' motion for entry of the order was made pursuant to section 363(b) of the Bankruptcy Code, which permits debtors-in-possession to use property of the estate.[140] However, upon confirmation, property of the estate vested in the Reorganized Debtors and the authorizations contained in the order **became moot**; the Reorganized Debtors were free from the restrictions imposed upon use of property of the estate. Even if the Taxes Order were not moot, it would have been superseded by the treatment of prepetition claims provided for in the Plan, which was in "**complete** satisfaction, discharge, and release" of those claims.[141] Thus, Defendants' attempts to reconcile the Taxes Order and the Plan are inconsistent with the language of both.[142]

Finally, this Court has already rejected Defendants' exact argument that the Taxes Order authorized payment of the 2017 Ad Valorem Taxes: "Now I agree with Mr. Grogan, the tax motion did not authorize the payment of these. The plan controlled, it took over the tax motion."[143]

## CONCLUSION

WHEREFORE, Vanguard respectfully requests that the Court (i) deny Defendants' Motions for Summary Judgment and (ii) grant Plaintiff such further and other relief as is just and equitable.

---

[139] *E.g.*, Johnson Motion ¶ 54.

[140] Taxes Motion ¶ 27.

[141] Plan § VIII.B (emphasis added); *see also id.* § XII.G ("Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.").

[142] *See, e.g.*, Campbell Motion, at 44 ("[T]he Final Order Authorizing Tax Payments provided the basis on which the Debtors ***may*** pay tax claims; the Confirmation Order and Plan set forth the basis on which the Debtors' estates ***must*** pay tax claims.").

[143] Hr'g Tr. at 91:23–25, Feb. 5, 2018 (attached hereto as "Exhibit E").

Dated: March 14, 2019

**BLANK ROME LLP**

*/s/ James T. Grogan*

James T. Grogan, Esq. (Tex. Bar No. 24027354)
717 Texas Avenue
Houston, Texas 77002
Telephone: (713) 228-6601
Facsimile: (713) 228-6605

Matthew E. Kaslow (admitted *pro hac vice*)
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555

*Attorneys for Vanguard Operating, LLC*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on March 14, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on Defendant.

*/s/ Matthew E. Kaslow*
Matthew E. Kaslow